287 N.J. Super. 612 (1995)
671 A.2d 653
ALEXANDER J. MUSTILLI, PLAINTIFF,
v.
JOAN MUSTILLI, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Monmouth County.
Decided November 1, 1995.[1]
*615 Marlo J. Hittman for plaintiff (Margolis, Meshulam & Pobereskin, attorneys).
John F. DeBartolo for defendant (Atkinson, DeBartolo & Kalapos, attorneys).

OPINION
FISHER, J.S.C.
The motions recently filed by plaintiff, Alexander Mustilli, raise interesting questions regarding the applicability of the entire controversy doctrine to this matrimonial action. Before reaching those issues, it is important to review the procedural history of this case.

*616 I

PROCEDURAL HISTORY
This once relatively simple matrimonial action was commenced by the filing of a complaint on December 20, 1994. The matter went before an ESP panel on June 20, 1995, but did not settle. That same day, the court held a settlement conference which also did not bear fruit; both counsel agreed that the only thing left to do was assign a trial date. No one suggested the need for further discovery.
The case was assigned a trial date of September 21, 1995. Prior to that time, plaintiff retained new counsel (hereinafter "plaintiff's second attorney") who promptly filed a motion for leave to file an amended complaint (to set forth a claim for damages against defendant) on August 23, 1995. Due to this late filing, the motion was made returnable on the trial date. Before arguing the motion, the parties engaged in extensive discussions, with and without the court, in an effort to settle the case. At the conclusion of these discussions, plaintiff's second attorney advised that a settlement appeared at hand but desired more time to review the proposed terms with his client. In light of that representation, the motion to amend was placed in abeyance and the trial adjourned indefinitely.
A few days later, plaintiff's second attorney advised that the case was not settled and requested that the motion to amend be relisted. The court placed that motion on its calendar for October 13, 1995. The motion was denied and a trial date set for October 23, 1995.
On October 18, 1995, by way of a telephone conference, the court was advised that plaintiff had terminated his relationship with his second attorney and had retained new counsel (hereinafter "plaintiff's new counsel"). Because of the pending trial date, plaintiff's new counsel sought leave to appear pursuant to R. 1:11-2. At that time, new counsel argued that the trial should be adjourned because of the substitution and also because of a *617 perceived need to file an amended complaint in order to assert a legal malpractice action against plaintiff's first attorney. The court indicated that the substitution of counsel would not be permitted if the adjournment was sought for any reason other than the effect of the motion to file an amended complaint to include a legal malpractice action. New counsel then advised that the adjournment would be sought only for the latter reason. The court permitted the substitution and directed that the motion for leave to file an amended complaint be filed no later than October 20, 1995, returnable on October 23, 1995, i.e., the trial date.
On the morning of October 20, 1995, the court received a motion for an adjournment of the trial date due to plaintiff's claimed need for additional discovery. The court immediately scheduled a telephone conference with plaintiff's new counsel, his second attorney and defense counsel. Since the plaintiff, contrary to the representations of new counsel on October 18, 1995, was seeking a delay of the trial for reasons previously waived, the substitution of counsel issue was revisited. The court permitted the substitution for reasons placed on the record at that time and indicated that the motion for an adjournment of the trial would be heard on October 23, 1995 along with the motion to amend the complaint which was also filed later that day. Plaintiff also moved, at the same time, for (1) reconsideration of the October 13, 1995 order (which denied leave to file an amended complaint to include a damages claim), and (2) a dismissal of defendant's counterclaim for damages.

II

THE MOTION TO AMEND THE COMPLAINT TO INCLUDE A LEGAL MALPRACTICE ACTION

The impact of the entire controversy doctrine on plaintiff's assertion of a legal malpractice claim must be assessed in the light of the quartet of entire controversy cases recently decided by our *618 Supreme Court.[2] While much has been said of the entire controversy doctrine in recent days  particularly regarding that doctrine's impact on a later-asserted legal malpractice action[3]  nothing has been said about the accrual of a legal malpractice action during the pendency of a matrimonial action and very little at all about the entire controversy doctrine's impact in family part actions. In the wake of Giovine v. Giovine, 284 N.J. Super. 3, 663 A.2d 109 (App.Div. 1995) and Circle Chevrolet, these issues can be expected to arise far more frequently in this context. Indeed, this case brought these novel issues to a head with great rapidity after the Giovine and Circle Chevrolet decisions[4].
The Supreme Court repeatedly acknowledged throughout its recent cases that the application of the entire controversy doctrine is discretionary and "best left to case-by-case determination." Circle Chevrolet, supra, 142 N.J. at 290, 662 A.2d 509; DiTrolio, supra, 142 N.J. at 275, 662 A.2d 494; see, also, Cogdell v. Hospital Ctr., 116 N.J. 7, 27-28, 560 A.2d 1169 (1989). The doctrine seeks to further "the judicial goals of fairness and efficiency" by requiring, whenever appropriate, "that the adjudication of a legal controversy should occur in one litigation in only one court." Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169; Circle Chevrolet, supra, 142 N.J. at 289, 662 A.2d 509. In applying this policy on a case-by-case basis, consideration should be given to the more particularized objectives of the doctrine: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a *619 material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio, supra, 142 N.J. at 267, 662 A.2d 494.
Of the four recent cases, DiTrolio and Circle Chevrolet deal specifically with the impact of the entire controversy doctrine on a later-asserted legal malpractice claim. Neither case dealt with such a claim, however, in the context of a prior or pending matrimonial action.
Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979) appears to be New Jersey's earliest reported decision on the application of the entire controversy doctrine in a matrimonial context. Tevis determined that a tort claim asserted by one spouse against the other must be joined in a pending matrimonial action or be lost. An action to determine whether an insurer was required to defend and indemnify regarding an interspousal tort claim brought in a matrimonial action, according to Chiacchio v. Chiacchio, 198 N.J. Super. 1, 486 A.2d 335 (App.Div. 1984), need not be joined to the latter. It has also been held that an interspousal tort need not be joined (1) to an ongoing custody dispute between the parties, J.Z.M. v. S.M.M., 226 N.J. Super. 642, 545 A.2d 249 (Law Div. 1988); (2) during the pendency of a divorce action when the tort was committed while the action was pending, Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986); or (3) to a domestic violence action, Lickfield v. Lickfield, 260 N.J. Super. 21, 614 A.2d 1365 (Ch.Div. 1992).
There is little point at this stage to seek harmony from all these cases. While Chiacchio, J.Z.M. and Brown all took an anti-joinder approach to the dissimilar claims they compared, perhaps the best way to consider the impact of those cases herein is to recognize that they preceded not only Circle Chevrolet and its companion cases, but the Court's watershed Cogdell decision as *620 well.[5] The clear message to be gleaned from the current state of our Supreme Court's entire controversy jurisprudence is that joinder is very much the rule and once joinder occurs, proper case management should remedy all the inequities or inefficiencies that joinder may cause. Only Lickfield's approach, in light of its own unique circumstances, does not appear to be wholly inconsistent with the current view of the entire controversy doctrine.[6]
As noted earlier, this court is writing on a blank slate in determining whether a legal malpractice action must be brought within the matrimonial action in which the alleged malpractice occurred. Even though a legal malpractice action is traditionally an action at law and the dissolution of a marriage is an equitable matter, and even though there is an entitlement to a jury trial in the former but not the latter, and even though there is little commonality between the two claims, the better practice recognized now by our Supreme Court compels the joinder of these actions. It is better to require the possessor of the newer claim to assert that claim in the pending action mainly because of the need for the parties to all these claims to know of the others' existence, to be provided with an opportunity to be heard in the other claim before the entry of judgment and to provide the court with the ability to manage the claims in a fair and expeditious manner. In *621 its essence, the entire controversy doctrine requires a litigant to "apprise[] the court and his adversary" of the existence of a constituent claim and to "submit[] to judicial discretion the determination of whether it should be joined in that action or reserved." Brown, supra, 208 N.J. Super. at 382, 506 A.2d 29, quoted with approval in Circle Chevrolet, supra, 142 N.J. at 293, 662 A.2d 509.
This would appear to be a situation in which plaintiff is at risk of losing the right to pursue the legal malpractice action if not asserted at this time. Accordingly, the motion for leave to file and serve the amended complaint is granted.

III

THE MOTION TO ADJOURN THE TRIAL DUE TO THE JOINDER OF THE LEGAL MALPRACTICE ACTION

The more urgent controversy involves plaintiff's request for an adjournment of the imminent trial of the matrimonial issues. Plaintiff believes that the pleading of the legal malpractice action herein requires an adjournment of the dissolution action until such time as the legal malpractice action is ready for trial. That argument completely misconstrues the ability of a trial court to manage the bundle of claims before it. As the court emphasized in Circle Chevrolet, "the entire controversy doctrine does not require that the malpractice claim be actually litigated with the underlying action." 142 N.J. at 293, 662 A.2d 509. Rather, a trial court is "empowered to segregate different claims to assure manageability, clarity and fairness," Mystic Isle, supra, 142 N.J. at 324, 662 A.2d 523, and has "appropriate tools" at its disposal, see, e.g., R. 4:38-2(a) (which permits a court to sever claims "for the convenience of the parties or to avoid prejudice"), "to address and accommodate these concerns and to remedy any inequities," Mystic Isle, supra, 142 N.J. at 325, 662 A.2d 523.
The legal malpractice action gives rise to a right by the parties to demand a trial by jury; the issues presently outstanding in the *622 matrimonial action do not[7]. Nor is it likely that there will be an overlap in the testimony in the matrimonial and malpractice actions. The latter action concerns the plaintiff's first attorney's alleged failure to plead the marital tort claim before the expiration of the statute of limitations and the evidence which might be relevant would include the discussions between plaintiff and his first attorney and any directions the former might or might not have given the latter. Such evidence has no conceivable bearing on the alimony, child support and equitable distribution issues outstanding. This court can conceive of no scenario which would make it feasible or judicially economical for these claims to be tried simultaneously.
Parroting the Supreme Court's comment, plaintiff claims that if the matrimonial trial is not adjourned "the proposed malpractice defendants ... will have lost the significant opportunity to participate in discovery and develop defenses in the broader litigation context involving all of the responsible participants in the tortious actions giving rise to" his claims. Pb. at 22-23; see, Mystic Isle, supra, 142 N.J. at 328, 662 A.2d 523. It is difficult to imagine that defendant would have any interest in participating in discovery regarding the claim against plaintiff's first attorney. Or, assuming arguendo that there is going to be any other discovery on the matrimonial issues, it is beyond comprehension that the defendant in the legal malpractice action would want to participate in those proceedings. Nor is there a valid argument to be made that the discovery on these separate claims will overlap. Again, that assumes there are ongoing discovery proceedings on the matrimonial *623 issues and, since there are not, any such concerns are not implicated in this case.
Accordingly, this court can see no reason why the newly-joined malpractice claim should remain appended to the matrimonial action. The claims will be severed; thus, there is no need or reason to adjourn the trial of the matrimonial issues because of this new claim.

IV

THE MOTION TO ADJOURN THE TRIAL DATE DUE TO A CLAIMED NEED FOR ADDITIONAL DISCOVERY

Plaintiff argues that additional discovery is needed on the matrimonial issues. This argument surfaced on October 18, 1995. As indicated in Part I, supra, no such request was made prior to this case going to an ESP panel on June 20, 1995 or the subsequent settlement/case management conference held by the court that same day, no such request was made when a September 21, 1995 trial date was scheduled or at any time prior to September 21, 1995, no such request was made during the lengthy settlement conference which took place on September 21, 1995, no such request was made when the motion to amend to include a marital tort was argued on October 13, 1995 or even when the trial date was rescheduled for October 23, 1995.
Now, armed with new counsel, plaintiff argues that the trial should be delayed because of an alleged need to investigate further defendant's income level and earning capacity (defendant alleges a gross yearly income of $17,000; plaintiff now claims that she probably earns more or, at least, should earn more) and the tort allegations (claiming that the issue of fault is relevant on the alimony issue). Nothing else specific has been indicated.
In response to the contention that these matters were not urged previously, plaintiff argues that he should not be penalized for the shortcomings of his prior counsel and that "swift justice demands more than just swiftness," Henderson v. Bannan, 256 F.2d 363, *624 390 (6th Cir.1958) (Stewart, J., dissenting); Tyler v. N.J. Auto. Full Ins., 228 N.J. Super. 463, 468, 550 A.2d 168 (App.Div. 1988). Defendant asserts that the request for further discovery conceals a desire to simply delay the trial and that she is ready, willing and able  and particularly anxious  to conclude this matter.
Plaintiff argues that he should not be prejudiced by his prior counsel's failure to seek this allegedly necessary discovery. Who should be prejudiced, the defendant? This is not a situation where discovery has been ongoing and was not completed by the time of trial or where a party has been dilatory or obstreperous in discovery up until the assignment of a trial date. For four months, the parties and the court have proceeded with the understanding that the case was ready for trial. If a mistake was made by plaintiff's prior counsel in not seeking this allegedly important discovery at the appropriate time, it is not the defendant who should suffer the consequences.
Accordingly, the motion to adjourn the trial for discovery reasons is denied.[8]

V

THE MOTIONS FOR RECONSIDERATION OF THE OCTOBER 13, 1995 ORDER AND FOR DISMISSAL OF THE COUNTERCLAIM

As indicated elsewhere in this opinion, in light of the pending trial date the court permitted plaintiff to move for leave to file an amended complaint and for an adjournment of the trial on short notice to defendant. Those motions were filed on October 20, 1995 and heard on Monday, October 23, 1995. That gave defendant no opportunity to file responsive papers and little *625 opportunity to fully review plaintiff's 26-page and 11-page briefs and other supporting papers. Because of her desire to move the case toward its ultimate disposition, defendant consented to that abbreviated schedule, and the court permitted those motions to be filed despite the very short notice provided to defendant. However, the court did not give plaintiff leave to file the motions for reconsideration and dismissal on short notice; indeed, plaintiff never asked for leave to expedite those motions. The motions were simply filed and served along with the other papers.
The court possesses a significant amount of discretion regarding the scheduling of such applications. That discretion is abused, however, when it deprives a litigant of a full and fair opportunity to be heard. Since the defendant was not given sufficient notice of the reconsideration and dismissal motions as required by R. 1:6-3, and since leave to provide lesser notice was not sought from the court in advance, these motions are denied without prejudice.

VI

CONCLUSION
For the reasons set forth above, an order has been entered which (1) permits plaintiff leave to file and serve an amended complaint containing a legal malpractice action against his first counsel, (2) severs the malpractice action from the matrimonial issues, (3) denies the request for an adjournment of the trial of the matrimonial issues, (4) denies without prejudice the motion for reconsideration of the October 13, 1995 order, and (5) denies without prejudice the motion to dismiss defendant's counterclaim.
NOTES
[1] This opinion supersedes the decision delivered from the Bench on October 23, 1995.
[2] DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494 (1995); Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); Mystic Isle Development Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523 (1995); Mortgageling Corp. v. Commonwealth Land Title, 142 N.J. 336, 662 A.2d 536 (1995).
[3] See, Circle Chevrolet, supra, and Mystic Isle, supra.
[4] Plaintiff's motion to amend the complaint to include a damages claim, which brought the matter to this present juncture, was filed 12 days after Giovine and 22 days after Circle Chevrolet were decided.
[5] For example, the denial of joinder in J.Z.M. emphasized the court's conclusion that "[t]here is simply no reason for the tort action to be tried together with the post-judgment custody dispute." 226 N.J. Super. at 646, 545 A.2d 249. While that was undoubtedly correct, Circle Chevrolet and the others emphasize that joinder should normally occur but that does not necessarily mean that the claims should be tried simultaneously.
[6] The experienced family judge in Lickfield recognized that the expeditious approach taken in domestic violence cases militates, in most instances, against the joinder of a slower-paced interspousal tort action. The Legislature not only contemplated but mandated the rapid adjudication of domestic violence matters. N.J.S.A. 2C:25-29a. Thus, the goals of the entire controversy doctrine are hardly served, and perhaps the purposes of the Prevention of Domestic Violence Act are disserved, by the joinder of such claims. Although, again, it is equally valid to argue that the various available case management techniques, including the ordering of separate trials, can satisfy all these concerns.
[7] The motion papers contained as required, see, R. 4:9-1, a copy of the proposed amended complaint. That proposed pleading did not contain a demand for a trial by jury of the malpractice action, but after the court ruled from the Bench on these motions, plaintiff's new counsel indicated a desire to include such a demand in the amended pleading to be filed and served now with the court's leave. A skeptic might attach some significance (i.e., an attempt by plaintiff prior to the ruling to show some kinship between these claims) to this late request. This court chooses to express no view on that matter at this time.
[8] When this matter was decided from the Bench on October 23, 1995, the court indicated that while it was in the midst of another trial that this would be the next ready case to be tried. Plaintiff requested a stay of the trial so that he could move for leave to appeal. On the representation of counsel that such a motion would be filed, trial was stayed until October 31, 1995.